CATTANI, Judge:
¶ 1 In this case, we consider whether a claim based on a divorce settlement agreement executed years before the decedent's death, but not enforceable until after death, should be deemed to have arisen before the decedent's death for purposes of Arizona Revised Statutes ("A.R.S.") § 14-3803. This issue is significant in determining when the statute of limitations commences on a creditor's claim against the decedent's estate for breach of such a settlement agreement. We hold that when a person enters into a contract obligating him to act while living to ensure a payment to the claimant at or after his death, a claim for breach arises before the decedent's death. Accordingly, and for reasons that follow, we affirm the superior court's ruling barring Judith Evitt-Thorne's claim against her ex-husband's estate as time-barred under A.R.S. § 14-3803.
FACTS AND PROCEDURAL BACKGROUND
¶ 2 Evitt-Thorne and Charles Evitt divorced in 1987. Their settlement agreement included the following provision:
10. Death Benefits to the Wife. If wife shall survive Husband, Husband agrees to provide wife ... the sum of $150,000.00 upon Husband's death. This provision shall be deemed satisfied if Husband provides insurance proceeds from any existing policy of life insurance or any new policy which Husband may from time to time obtain, including policies in which the Wife is now or in the future may be named as the owner and/or beneficiary.
¶ 3 Evitt remarried and moved to Wyoming, where he died in September 2013. Probate proceedings were initiated in Wyoming, and Evitt's surviving spouse and their two daughters were appointed as personal representatives of the estate.
¶ 4 The personal representatives were unaware of the settlement agreement Evitt made with Evitt-Thorne 26 years before he died. Preparing to settle the estate, the personal representatives reviewed Evitt's available business records and asked Evitt's accountant *1148 to identify any known creditors, debts, or regular payments being made on his behalf. The personal representatives provided notice to known creditors pursuant to Wyoming Statutes Annotated ("W.S.A.") § 2-7-205(a)(ii), and provided notice to the estate's unknown creditors by publication pursuant to W.S.A. § 2-7-201. The Wyoming probate court settled the estate in May 2014 and entered a stipulation for final distribution of the estate in August 2014.
¶ 5 A year after the estate was settled, Evitt-Thorne sent a letter to Evitt's daughters asserting that she intended to file a claim against the estate for the amount stated in the settlement agreement and would initiate probate proceedings in Arizona if the estate did not respond. The personal representatives told Evitt-Thorne they were not aware of an outstanding obligation and believed she had already been paid all monies owed to her.
¶ 6 Evitt-Thorne initiated probate proceedings in Arizona and petitioned for allowance of her claim. The personal representatives intervened and moved for summary judgment disallowing the claim, arguing it was barred by Wyoming's nonclaim statute and thus also was barred under A.R.S. § 14-3803(B), which bars claims against a decedent's estate that arose before the death of the decedent and are barred by the nonclaim statute of the decedent's domicile. The superior court granted the motion and awarded the estate attorney's fees of $46,926.27. Evitt-Thorne timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(9).
DISCUSSION
¶ 7 Evitt-Thorne argues that the superior court erred by granting summary judgment because: (1) her claim was not barred because it arose "at or after the death of the decedent," see A.R.S. § 14-3803(C) ; (2) there was a genuine issue of material fact as to whether she was a "reasonably ascertainable" creditor under Wyoming law; and (3) in any event, under W.S.A. § 2-7-703(c)(i), she was entitled to equitable relief due to "peculiar circumstances." We review de novo the grant of summary judgment. In re Estate of Wyttenbach , 219 Ariz. 120, 122, ¶ 8, 193 P.3d 814, 816 (App. 2008). We also review de novo issues of statutory interpretation. Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Sys. Admin. , 206 Ariz. 1, 4, ¶ 10, 75 P.3d 91, 94 (2003).
¶ 8 Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a) ; Orme Sch. v. Reeves , 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We view the facts in the light most favorable to, and draw reasonable inferences for, the party against whom summary judgment was entered. Ader v. Estate of Felger , 240 Ariz. 32, 35, ¶ 2, 375 P.3d 97, 100 (App. 2016).
I. A.R.S. § 14-3803.
¶ 9 Evitt-Thorne argues that her claim was not barred because it arose after the decedent's death, and that she thus had two years to file a claim pursuant to A.R.S. § 14-3803(C). A claim that "arose before the death of the decedent" is barred in Arizona if it is barred by the nonclaim statute of the decedent's domicile. A.R.S. § 14-3803(A)-(B). But if a claim "arise[s] at or after the death of the decedent," the claimant has until two years after decedent's death plus any time remaining on the notice of probate. A.R.S. § 14-3803(C)(2). Thus, whether § 14-3803(B) operates to bar Evitt-Thorne's claim (because it was not filed within the time required under Wyoming law) depends on whether the claim arose "before" or "at or after" the decedent's death. See A.R.S. § 14-3803(A)-(C).
¶ 10 Evitt-Thorne argues that her claim did not arise until Evitt's death because it could not be enforced until then. But the ordinary meaning of "arise" is "to come into being; originate." Ader , 240 Ariz. at 38, ¶ 16, 375 P.3d at 103 (citing The American Heritage Dictionary 95 (5th ed. 2011); see also Black's Law Dictionary (10th ed. 2014) ("To originate; to stem (from)"). Thus, a claim "arises ... when a decedent commits the act that is the basis of the claim." Ader , 240 Ariz. at 38, ¶ 16, 375 P.3d at 103.
¶ 11 Although Evitt-Thorne's claim was not enforceable until decedent's death, the claim *1149 itself was based on the settlement agreement, which originated 26 years before the decedent's death. That the claim was not enforceable, because it was not yet due and contingent, is inapposite. Both § 14-3803(A) and (C) apply to claims "whether due or to become due, absolute or contingent." Thus, Evitt-Thorne's claim was a contingent claim that arose before Evitt's death under § 14-3803.
¶ 12 We note that the same rule would apply if there were an agreement to pay a sum certain several years after the decedent's death. See A.R.S. § 14-3803(A) (applying to claims "whether due or to become due " (emphasis added). If, for example, a payment was not due until three years after a decedent's death, the claimant would nevertheless be required to comply with § 14-3803(A) and timely notify the decedent's personal representative of the claim even though payment was not yet due; to hold otherwise would require that a decedent's estate remain open indefinitely and would frustrate Arizona's policy of promoting the "speedy and efficient" settling of the estate. See A.R.S. § 14-1102(B)(3) ; see also In re Estateof Winn , 214 Ariz. 149, 153, ¶ 20, 150 P.3d 236, 240 (2007) ; Barnett v. Hitching Post Lodge, Inc. , 101 Ariz. 488, 491, 421 P.2d 507, 510 (1966).
¶ 13 Finally, our interpretation is consistent with rulings in other Uniform Probate Code jurisdictions that have interpreted statutes similar to A.R.S. § 14-3803. See In re Estate of Hadaway , 668 N.W.2d 920 (Minn. Ct. App. 2003) (holding that a claim based on a dissolution judgment arose before the decedent's death even though payment was due upon the decedent's death); see also Spohr v. Berryman , 589 So.2d 225, 227-28 (Fla. 1991) (holding that a claim against the decedent's estate based on a divorce agreement "arose before the death of the decedent" because the claim "was based upon an agreement which was made many years before [the decedent's] death").
¶ 14 Because Evitt-Thorne's claim falls under § 14-3803(A), her claim was barred in Arizona if it was not timely asserted in Wyoming. See A.R.S. § 14-3803(B). Under Wyoming's nonclaim statute, claims are barred unless they are filed within three months of the first date of the publication of notice. W.S.A. §§ 2-7-703, -201. Here, notice was first published on December 5, 2013; thus, any claim against the estate had to be filed by March 5, 2014. Evitt-Thorne did not take any action until she initiated Arizona probate proceedings in July 2015. Accordingly, Evitt-Thorne's claim was barred by Wyoming's nonclaim statute and thus is also barred under A.R.S. § 14-3803(B).
II. Reasonably Ascertainable Creditor.
¶ 15 Evitt-Thorne also argues that a genuine issue of fact as to whether she was a reasonably ascertainable creditor precluded summary judgment. Under Wyoming law, a decedent's estate must provide notice to creditors by publication, W.S.A. § 2-7-201, or by mail, W.S.A. § 2-7-205(a). A creditor "whose identity is reasonably ascertainable" within three months is entitled to notice by mail. W.S.A. § 2-7-205(a)(ii), -201. A creditor must file any claims within three months of the date notice was first published (or within 30 days after notice is mailed) or the claim is barred; the claim is not barred, however, if the creditor was "reasonably ascertainable by the personal representative" and did not receive notice by mail. W.S.A. § 2-7-201, -703(a), (c)(ii).
¶ 16 Evitt-Thorne does not dispute whether the estate published notice in compliance with W.S.A. § 2-7-201. Instead, Evitt-Thorne argues that she was entitled to notice by mail because she was a reasonably ascertainable creditor. A creditor is "reasonably ascertainable" if the creditor is discoverable through "due diligence to identify the decedent's potential creditors from all available sources at hand." In re Estate of Novakovich , 101 P.3d 931, 938, ¶ 27 (Wyo. 2004) (citation omitted).
¶ 17 Evitt-Thorne argues that, because Evitt had conversations with his daughter (who was one of the personal representatives of his estate) years before his death about his obligations to Evitt-Thorne, there was an issue of fact as to whether Evitt-Thorne was a reasonably ascertainable creditor. But the only statements attributed to Evitt in the record were to the effect that he "no longer *1150 owed [Evitt-Thorne] anything and that any obligation he had ... had long ago been paid in full." Without more, those statements made years before Evitt's death and that only referenced an agreement that had already been satisfied, did not make Evitt-Thorne a reasonably ascertainable creditor. Accordingly, the superior court properly rejected Evitt-Thorne's claim on that basis.
III. Equitable Relief.
¶ 18 Evitt-Thorne further argues that she is entitled to relief from the procedural bar of the nonclaim statutes under the unusual circumstances of this case. Under W.S.A. § 2-7-703(c)(i), the presence of "peculiar circumstances" may entitle a creditor to prosecute a claim that is otherwise barred. Under the statute, the failure to file a timely claim is excused if it "was caused by circumstances that are out-of-the ordinary, and it is fair to excuse the failure." Scott v. Scott , 918 P.2d 198, 201 (Wyo. 1996). We review the denial of equitable relief for an abuse of discretion. McCloud v. State , 217 Ariz. 82, 87, ¶ 10, 170 P.3d 691, 696 (App. 2007) ; see also In re Estate of Graves , 267 P.3d 1070, 1072, ¶ 11 (Wyo. 2011).
¶ 19 Evitt-Thorne asserts that because the probate occurred in Wyoming and was initiated shortly after Evitt's death, she is entitled to equitable relief. But Evitt had been domiciled in Wyoming for many years before he died, a fact known to Evitt-Thorne, so it was not peculiar that Evitt's probate would occur in Wyoming.
¶ 20 Evitt-Thorne also argues that she is entitled to equitable relief because the personal representatives did not mention the Wyoming probate proceeding when they responded to Evitt-Thorne's demand letter in May 2015. But Evitt-Thorne's claim was "barred forever" under W.S.A. § 2-7-703(a) as of March 5, 2014, and Evitt's estate had been settled in the Wyoming probate court well before Evitt-Thorne's May 2015 demand letter.
¶ 21 Finally, Evitt-Thorne claims that the manner in which the Arizona probate proceedings were carried out warrants equitable relief. She cites in particular her initiation of the Arizona proceedings and the superior court's initial finding that the claim should be addressed in Arizona and not in Wyoming, the court's delay in appointing personal representatives, the court's order that the estate place $175,000 from the estate in a restricted account to ensure that there would be assets available were Evitt-Thorne to prevail on her claim, and the court's conclusion that Evitt-Thorne needed to make her claim even before she was aware of Evitt's death. But none of these circumstances explain why Evitt-Thorne did not file a claim before March 5, 2014. Although it might have required extra diligence on Evitt-Thorne's part to learn of Evitt's death (or to ascertain whether he was maintaining a life insurance policy in her name) in time to assert a claim against his estate, it was her lack of diligence, rather than any of the circumstances she now cites, that resulted in her claim being barred under Wyoming law. Accordingly, the superior court did not abuse its discretion by finding that Evitt-Thorne was not entitled to equitable relief under W.S.A. § 2-7-703(c)(i).
IV. Attorney's Fees.
¶ 22 Evitt-Thorne finally argues that if we reverse the superior court's grant of summary judgment, we should also reverse the superior court's award of attorney's fees and costs to the estate. Because we affirm the superior court's grant of summary judgment, we also affirm its award of attorney's fees and costs to the estate.
¶ 23 The personal representatives request fees on appeal under A.R.S. § 12-341.01. In an exercise of our discretion, we deny their request.
CONCLUSION
¶ 24 For the foregoing reasons, we affirm. As the prevailing party, the personal representatives are entitled to an award of costs upon compliance with ARCAP 21.